Perry J. Schneider, Esq.
Hannah Stone, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
E-Mail: perrys@bigskylawyers.com
hstone@bigskylawyers.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY,<br><br>Petitioner,<br><br>-vs-<br><br>SUMMIT PROPERTY MANAGEMENT, INC.,<br><br>Respondent. | Cause No. _____<br><br>**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT** |

COMES NOW Petitioner Penn-Star Insurance Company ("Penn-Star"), by and through undersigned counsel of record, and for its Complaint alleges as follows:

**COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 1 of 17**

## PARTIES

1. Petitioner Penn-Star is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Bala Cynwyd, Pennsylvania. As such, Penn-Star is a citizen of Pennsylvania.

2. Respondent Summit Property Management, Inc. ("Summit") is a corporation organized under the laws of Montana with its principal place of business in Missoula, Montana. As such, Respondent Summit is a citizen of Montana.

## JURISDICTION AND VENUE

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the insurance policy at issue in this declaratory judgment action was issued by Penn-Star to Summit in Missoula County, Montana.

4. Subject matter jurisdiction is based on 28 U.S.C. § 1332(a) as this action involves a controversy between citizens of different states and the amount in controversy exceeds $75,000.00.

5. This Court has subject matter jurisdiction to declare the rights and obligations of the parties herein with regard to the insurance policy at issue pursuant to 28 U.S.C. § 2201.

6. The contracts and obligations at issue in this case arise in Montana and must be interpreted under Montana law.

## APPLICABLE INSURANCE POLICY

7. Penn-Star provided Summit with commercial insurance coverage under Penn-Star Policy No. PAC-7150805 with effective dates from 2/13/2018 to 2/13/2019 (hereinafter "the Policy").

8. The Policy lists Summit Property Management, Inc. as the named insured, and includes Commercial Property Coverage and Commercial General Liability Coverage.

9. All coverage provided under the Policy is subject to the terms and conditions of the Policy.

10. A certified copy of the Policy is attached hereto as Exhibit A.

## UNDERLYING LITIGATION

11. On or about November 19, 2020 Amica Mutual Insurance Company ("Amica" or "Underlying Plaintiff") filed an action against Summit in the Fourth Judicial District Court, Missoula County, as Cause No. CV-32-2020-001508-SU ("Underlying Litigation").

12. Summit has not been served in the Underlying Litigation.

13. The Underlying Litigation arises out of alleged failure to supervise a remodel for a heat system in a property managed by Summit. A copy of the Complaint filed in the Underlying Litigation (hereinafter the "Underlying Complaint") is attached hereto as Exhibit B.

14. The Underlying Complaint includes, in pertinent part, the following factual allegations:

 a. That on or about October 20, 2009, Summit entered into an Agreement to Manage Residential Property with William and Katherine Ward (the "Wards") to lease and provide management of property located at 447 Burlington Avenue, Missoula, MT (the "Property"). Exh. B at ¶ 6.

 b. The management agreement was renewed annually and was in effect in 2018. *Id.*

 c. In 2013, electric baseboard heating and thermostats were installed to provide heat, to replace an in-floor gas furnace system. Exh. B at ¶ 9.

 d. Summit arranged and supervised the installation of the new heat system. Exh. B at ¶ 10.

e. Summit did not remove the unused furnace and failed to eliminate debris from falling into the open grate system of the old furnace. Exh. B at ¶ 12.

f. The gas valve of the floor furnace was not shut off or disconnected from the furnace thermostat. Exh. B at ¶ 19.

g. On or about December 3, 2017, Amica issued insurance Policy No. 68122505AC to the Wards to insure the Property. Exh. B at ¶ 14.

h. On or about June 4, 2018, Summit entered a Residential Lease Agreement with John Greytak to lease the Property. The lease provided, in relevant part, that Greytak was to maintain the property in good condition, and further to maintain at least 55-degree heat in cold weather. Exh. B at ¶ 13.

i. On or about November 21, 2018, Greytak left the Property to spend time with family over the Thanksgiving holiday and turned off the baseboard heat to save money. Exh. B at ¶ 15.

j. The temperature fell below freezing over the next few days. Exh. B at ¶ 16.

k. Greytak returned to the Property on or about November 23, 2018 and discovered smoke and fire. The fire department was called

and extinguished the fire, but not before significant damage was caused. Exh. B at ¶ 17.

l. The fire was caused by a buildup of debris over time, which had collected in the heat panels of the in-floor system. When Greytak turned off the baseboard heat, the temperature in the property fell to a point that the gas to the in-floor system was triggered, and as the panels heated, they ignited the debris therein causing the fire. Exh. B at ¶ 18.

m. That because of Summit's failure to service or clean the in-floor system, and further failure to ensure the gas valve of the system was turned off, debris accumulated and was ignited, causing property damage. Exh. B at ¶¶ 19-20.

n. Amica paid in excess of $100,00 in claims associated with the fire. Exh. B at ¶ 21.

15. The Underlying Complaint brings three causes of action against Summit. First, the Underlying Complaint alleges Breach of Contract (Count I) on the basis that Summit agreed to "manage the property" and that it "breached its contract with the Wards," and as a result they "sustained damages". Exh. B at ¶¶ 23-25.

16. Second, the Underlying Complaint alleges Negligence (Count II) on the basis that Summit "negligently performed its duties as property manager" and that as a result, "the Wards sustained damages which Amica paid." Exh. B at ¶¶ 27-28.

17. The Underlying Complaint further alleges Negligence (Count III) against Greytak, asserting he "had a duty to keep and maintain the residence in good condition," which included a "duty to reasonably use and operate the heating system by making certain in cold weather that the thermostat would be set no lower than 55 degrees." By turning off the heat in the Property, Greytak "breached such duties thereby causing the fire." Exh. B at ¶¶ 30-32.

18. No parties have been served in the Underlying Litigation.

## COUNT I
## DECLARATORY JUDGMENT

19. Penn-Star re-alleges Paragraphs 1 through 18 above.

20. The parties to this lawsuit dispute whether coverage exists under Penn-Star Commercial General Liability ("CGL") Policy No. PAC-7150805 with effective dates from 2/13/2018 to 2/13/2019 for the claims asserted against Summit by Amica in the Underlying Litigation.

21. This action seeks a declaration as to Penn-Star's obligation to defend and indemnify Summit for the claims asserted against it in the Underlying Litigation.

22. An actual controversy exists between Penn-Star and Summit in that Penn-Star believes the claims Amica asserted against Summit in the Underlying Litigation are excluded by the Real Property Managed Endorsement, the Professional Services Exclusion, or other applicable exclusions.

23. To the extent coverage exists, the Penn-Star Policy includes clauses rendering the Policy excess over any other insurance available to Summit.

24. The Policy contains the following pertinent provisions:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I – COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . .

\*\*\*

## 2. Exclusions

This insurance does not apply to:

\*\*\*

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

\*\*\*

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*\*\*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

\*\*\*

### b. Excess Insurance

(1) This insurance is excess over:

\*\*\*

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

\*\*\*

## SECTION V – DEFINITIONS

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

17. "Property damage" means

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

22. "Your work"

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations

  **b.** Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

* * *

CG 00 01 04 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### REAL ESTATE PROPERTY MANAGED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**   The following is added to Exclusion **j. Damage To Property** of Paragraph **2. Exclusions of Section** I **- Coverage A - Bodily Injury And Property Damage Liability:**

  **2.**   **Exclusions**

This insurance does not apply to:

  **j.**   **Damage To Property**

"Property damage" to:

Property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT - Page 11 of 17

B.     The following is added to Paragraph **4.b.(l)** of **Other Insurance of Section IV -Commercial General Liability Conditions:**

### 4. Other Insurance

    b.     **Excess Insurance**
With respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

CG 22 70 04 13

* * *

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL EXCLUSION – PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I. With respect to "professional services" the following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to "wrongful acts".

II. As used in this endorsement the following definitions are added to SECTION V – DEFINITIONS

    A.     "Professional services" means any and all services performed for

others requiring special skills, experience and knowledge.

B. "Wrongful act" means any actual or alleged negligent act, error, omission, misstatement, or misleading statement committed by the insured or by any other person or entity for which the insured is legally liable in the performance of or failure to perform "professional services."

EPA-1631 (08/ 2010)

* * *

25. Coverage for the claims in the Underlying Litigation is excluded based on one or all of the provisions and/or exclusions stated above.

26. Alternatively, coverage for the claims in the Underlying Litigation is not triggered because the Policy is excess over other insurance available to Summit, including policies obtained by the Wards and Greytak.

27. The Real Estate Property Managed Endorsement (CG 22700413) excludes "property damage" to "[p]roperty you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity."

28. The Underlying Litigation is based upon a claim against Summit for its failure to use reasonable care in its duties as property manager for the Wards.

29. The only damages sought in the Underlying Litigation are for property damage.

30. The Real Estate Property Managed Endorsement Exclusion in the Policy unequivocally precludes coverage for the allegations the Underlying Plaintiff has asserted against Summit.

31. To the extent coverage is extended, the Excess Insurance clause under the Real Estate Property Management Endorsement provides "with respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess."

32. The Professional Services Exclusion in the Policy also precludes coverage for the allegations the Underlying Plaintiff has asserted against Summit in the Underlying Litigation.

33. The Endorsement for Professional Services precludes coverage for "professional services" which is defined as "any and all services performed for others requiring special skills, experience or knowledge." The Endorsement further provides that the Policy does not apply to "property damage" due to "wrongful acts" which is defined as "any actual or alleged negligent act, error, omission committed by the insured or by any other person or entity for which the insured is legally liable in the performance of or failure to perform "professional services"."

34. The Underlying Litigation alleged Summit was negligent in its services as a property manager, which include the knowledge to appropriately supervise and maintain the heating system.

35. The Underlying Litigation seeks property damage for Summit's failure to perform services, which is excluded under the plain language of the Policy.

36. The other provisions and/or exclusions cited above in Paragraph 24 may also preclude or limit coverage under the Insuring Agreements.

37. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities, if any, which exist as to the Penn-Star Policy No. PAC-7150805 for the claims asserted against Summit by the Amica in the Underlying Litigation.

## COUNT II
## ATTORNEYS' FEES

38. Penn-Star re-alleges Paragraphs 1 through 37 above.

39. Where no defense obligation is owed, an insurer may recoup costs to defend an insured made under a reservation of rights if the insurer provides timely notice of its right to recoup costs of defense.

40. Under the terms and conditions of the Policy, no coverage is available for the claims made and damages sought in the Underlying Litigation.

41.     Under the facts of this case, Penn-Star is entitled to an order granting its attorneys' fees and supplemental relief.

**WHEREFORE**, Penn-Star prays that this Court award the following relief:

1. That this Court issue a declaratory judgment finding Penn-Star owes no duty to defend and/or indemnify Summit in the Underlying Litigation;

2. That this Court find Penn-Star's Policy is excess to any other insurance available for damages in the Underlying Litigation;

3. That this Court order reimbursement of any indemnity payments made on Summit's behalf for any claims this Court deems outside the insuring agreement or barred by the provisions and/or exclusions in the Policy;

4. That this Court order reimbursement of defense costs expended on Summit's behalf for any claims this Court deems outside the insuring agreement or barred by the provisions and/or exclusions in the Policy, pursuant to *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469 (Mont. 2005); and

5. For such other and further relief as the Court deems just and proper.

DATED this 18th day of December, 2020.

By: /s/Perry J. Schneider
Perry J. Schneider

MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
*Attorneys for Petitioner*